May it please the Court. My name is Virginia Hoyt. I am here on behalf of the Appellant State Compensation Insurance Fund, and I plan to reserve three minutes for rebuttal. The key issue on appeal in this case is whether criminal restitution can be taken back from the victim of a crime by the trustee on behalf of the debtor and the defendant's estate pursuant to a preference action under 11 U.S.C. 547B. Although I represent the victim of a crime, it is actually the integrity of the Superior Court's judgment and orders in which I defend the State of California's sovereign immunity to determine and carry out the penal goals of a state and to protect the defendant who may be subject to a second sentence. Can I ask just a procedural, substantive question on that? You say that your argument is that the criminal justice system of California is at stake here, is basically its sovereign immunity to have its criminal justice sentencing system compromised by whatever we do in this case. Was the State of California ever asked to weigh in in this case? I have to admit that I asked an internal legal department that deals with the prosecutors all the time, and they were inclined to believe that they would not submit something. Recently, I spoke with other prosecutors in another jurisdiction, and they were outraged when they heard about the issue and said that they would absolutely have submitted briefs, an amicus brief, had they been asked.   absolutely have submitted briefs, an amicus brief, had they been asked. Is the California Constitution in Article I, Section 28B.13, which directs the courts to order restitution from a convicted wrongdoer in every case in which the crime has been committed?  And the reason for that is that the defendant has the opportunity to request that the restitution be mitigated, depending on their circumstances. However, this is not exactly like Kelly in that situation, in that in Kelly, in Connecticut, restitution is not at all controlled by the victim or by the amount of the restitution. The amount of the restitution is determined by the court in California as well as in Connecticut. Well, but in Connecticut, the restitution is just controlled by the court. The victim has no involvement in it, as I understand it. It turns all on penal goals and the situation of the defendant, whereas in California, it's a different idea, as I understand it. Well, it's curious that in the case of Kelly v. Robinson, in fact, the amount of restitution that was ordered was the exact amount of loss as determined as submitted by the defendant. That's correct, Your Honor. I understand that. I just looked at the statutes that controlled it, and they were not the same. The statute simply states that in California, there is a right to civilly enforce a criminal sentence of restitution. In Connecticut, it appears at that time that there was no civil right to enforce it. In this case, there was never any civil enforcement of restitution. It was ordered by the criminal court, and it was paid as part of the sentence of the criminal court. There is a Bankruptcy Appellate Panel decision which states that the fact that it is civilly enforceable is not to be held to diminish the criminal nature of the actual sentence. I guess I'd like to change from, I guess, where you wanted to start, which is it seems to me that my problem here is looking at a statute, 11 U.S.C. 547, and finding something in that statute that would give you any or give me any idea that I ought to rule for you in the statute itself. The statute itself, in the very first element, says that the payment must be to or for the benefit of a creditor. Right. In the U.S. Supreme Court case of Kelly v. Robinson, the court specifically stated that although a criminal restitution resembles a benefit to the victim, it is, in fact, a benefit to society. It is not for the victim that the prosecution proceeds against the defendant. Is there anything in the statute that suggests that restitution payments are exempt from preference treatment itself? As there was nothing in the statute when Kelly Court looked at the dischargeability provision, there was nothing whatsoever. Yeah, right. And then, in fact, in the Kelly Court, they had to come up with some historical or policy argument to make their decision, didn't they? Yes, they did. And even in the historical case that they cited in Ray Moore of 1900, that case itself, which was the only one they cited as a historical basis for saying many courts have not discharged criminal restitution, in that very case, the Court had stated that it disagreed with another court, which had a law of dischargeability of criminal restitution. Help me with something here. Kelly had to do with whether or not a debt was dischargeable. What we have here is a voidable preference, as I understand it, because the payment was made within the time limit of bankruptcy. Those are two different issues. Is it your position that every time that a debt is non-dischargeable, that payments made that would otherwise be voidable preferences are not voidable preferences? Not at all, Your Honor. We're talking about criminal restitution, part of a sentence by criminal courts in the State of California. Those are accepted from dischargeability. And those have a special place in the law because of public policy to show the deep respect that the Federal courts would have for the State criminal court system. I believe that these matters go hand in hand, Your Honor. Sorry, but isn't it true that even the Nelson case upon which you rely suggests there are no historical or policy arguments that would apply in this context? For that very reason, Your Honor, because it had never been presented in the Curry case, and then as this bankruptcy judge said in our case, which had not been raised as an issue being requested to be briefed, that is why I actually submitted the Weisberg Stanford Law Review article by the Stanford Law Professor, which goes into the history of the preference statute. And in that article, the professor identifies a case in Ray Hall from 1900 as well. And the citation would appear on page 31 of that law review article. And essentially, the court examines preference and the history of it and states that at no time has preference statute ever been without the condition of the morality involved in the parties. Basically, when you look at commercial transactions, the innocent creditor who happens to receive payments on a regular basis from the debtor is considered to not be in violation of the preference statute. They are allowed to receive those payments and keep those payments. The trustee cannot take it back as an ordinary course of business. They are actually looking to the innocence of the parties. I'm sorry. What kind of payments? We are talking about commercial transactions when payments are made, as they call it, in the ordinary course of business. That is considered a defense to the preference statute. The court in Ray Hall and the article talks about the fact that preference statute has constantly looked at the morality of the parties. What is the situation and who is in the innocent party? And I submit that it is the victim here and the court of the State of California, which is the innocent party. But isn't your argument really tossed on its head if you're going to look at all the exceptions because if, in fact, and there are quite a few exceptions to this, as we can see, and you've now cited one, that if, in fact, the statute has suggested all the exceptions, which would not allow us to enforce this, that, in fact, then what you would suggest as an exception is not really one the statute ever intended to enforce. I believe that, again, you look at the statute in light of the public policy as a whole. Public policy of bankruptcy law is to give the defendant debtor a fresh start. There would be no fresh start if, in fact, the trustee were to take back the money and then this claim is obviously a non-dischargeable claim such that the State of California can go ahead and ask for that money again. Well, if you really look at the policy of the bankruptcy court, the reason that we have this avoiding power is because we're suggesting that the debtor is not in charge of his estate at the time of filing. The debtor is not in charge of his estate for some time prior to the filing because the debtor has been unsolvent and the payment is made essentially creating a difference between creditors and, therefore, no creditor should have an advantage to another creditor, including the State of California or anyone else who's getting those payments and, therefore, it ought to be avoided and come back to the estate. That's the policy of the bankruptcy court, and they have outlined in the bankruptcy statutes all of the exceptions, which this is not one. If the court were to find or wish to find a place to wedge a defense to the Parkland statute, one could actually conceivably find that the superior court had given new value to the defendant when the defendant paid the restitution. By paying the criminal restitution, the superior court did not put the defendant in jail, and that certainly is new value that no one has argued. That's not argued. You know, if you take all of this following up on what Judge Smith was saying, if you take this all to the very end, you wind up with essentially a supremacy clause issue because the Constitution specifically puts bankruptcy for the Federal courts to determine, and Congress has said these are the exceptions to the preference, and there aren't any here. And if you're trying to say, well, the State law is the State policy, you call it sovereignty, but it's really the State policy that we're talking about, trumps the bankruptcy law, and that can't be. Well, actually, it is Congress that determined, after it legislatively overruled Davenport, it stated that these provisions will prevent the Federal bankruptcy courts from invalidating the results of State criminal proceedings. I believe that that was a pronouncement as to all bankruptcy courts, dealing with all of the statutes of the Bankruptcy Code, not just 547. I believe that this invalidates the State criminal proceeding. All that happens in this particular matter is that the money comes back, and as you've already suggested, there is not going to be a situation where he's going to be discharged, and therefore, he's going to have to pay the restitution as if it had been restitution ordered. And there was nothing in the order that said he had to pay it immediately. It just said he had to pay the restitution, just so happened he did. And so how does it invalidate the State criminal proceeding when he'll still have to pay? Because, Your Honor, in 1202. Excuse me, 1203.4, the defendant was dismissed from all disability relating to that crime, because he had served his sentence in full. Now, because the trustee would possibly take this money back, and the claim is what would be revived for the State, and then it is non-dischargeable, the defendant would not be dismissed from all disability resulting from the crime. Therefore, it is a direct interference with the State penal code. Is there any way for California to adjust to that? What would happen? In other words, if the rule stands that it's not dischargeable per Kelley, but Kelley doesn't extend to the preference, then as I understand it, in this case he got a certain sentence predicated on the fact of restitution. California could adjust its criminal system in some fashion to account for what might happen in any bankruptcy. Yes, Your Honor. There are always those possibilities in which the court could very well tell the defendant that if they were to file bankruptcy within three months of the time payment is made, that the plea bargain will be off and the defendant could go to jail. The bankruptcy lawyers could advise their clients, don't file bankruptcy for three months after you've made a large payment such as this, or else you may have to pay again. That is, of course, the reason why stare decisis is so important. And it would be very helpful if the bankruptcy courts were to follow a court sitting in superior judgment over it, even if, as they say, bankruptcy courts are adjunct courts of the district courts. Nonetheless, any court that sits in a superior status over another should be given the weight of the authority that is due. Thank you. I would move to, Your Honor, that the bankruptcy. Thank you, Your Honor. Good morning, Your Honors. May it please the Court. Reem Bellow, Weiland, Golden, Smiley, Wang, Eggball, and Strzok, on behalf of Nancy Hoffmeier Zamora, the appellee and Chapter 7 trustee. The language of Section 547 of the Bankruptcy Code is clear. All five elements in this case have been met. In fact, the state fund only challenges one of those elements. They only challenge the first element, correct? Yes, to or for the benefit of a creditor. By asserting that the payment of criminal restitution to the state fund, the state fund is not a creditor of this estate. However, the payment was made to the state fund, and the amount that was determined was based upon the amount submitted by the state fund to the district attorney's office. Not only was it paid directly to them, it was paid directly to them, not to the state of California, then distributed to them, as I understand. Yes, Your Honor, that's correct. But that's sort of getting bogged down and maybe we need to in the details of Kelly and the Connecticut statute. I mean, if we start parsing that, I'm not sure how helpful that is because the payment there was paid. A, the amount paid was exactly the amount of the debt. B, it wasn't paid directly to the victim. And I'm more concerned about what Kelly is, Justice Powell's opinion is fairly scholarly, if you want to say, is clearly had to reach out to try and impose upon a clear statute the policy and history that it does. And in doing so, he says various things such as federal bankruptcy courts should not invalidate the results of state criminal proceedings. Restitution does not create a debt or a debtor-creditor relationship. States' interest in administrating their criminal justice systems free from federal interference is one of the most powerful of the considerations that should influence a court considering equitable types of relief and so on and so forth. So why isn't counsel's argument correct that the effect of this, first of all, as a predicate, do you agree that this debt is non-dischargeable? If, in fact, the state fund can fit the criminal restitution judgment within the definition of 523A7, and in Kelly, the Supreme Court held that, yes, in fact, restitution does fit within 523A7, that it is non-dischargeable. The issue in Kelly. Okay. Okay. So it's non-dischargeable. Because that seems fairly important. If it isn't dischargeable, if your argument would be, well, it's not even non-dischargeable, it doesn't fit within Kelly for that purpose, then it seems fairly obvious it wouldn't be extended to the preference aspect. But assuming that it is non-dischargeable, okay, then why isn't the argument that motivated Kelly to read that into the dischargeability statute equally applicable for the reasons articulated, that the state criminal system looks at restitution as part of the societal interest in punishing and remediating criminal behavior? I think a few things. First, the timing issue in Kelly. In Kelly, you had a situation where a debtor was hit with a criminal restitution judgment and filed bankruptcy without having paid that debt. So surely the policy considerations in Kelly are clear. You don't want a debtor to be able to do that, to be sentenced with a criminal restitution payment, file bankruptcy, and then have that discharged. In our case, you had a case where the debtors were prosecuted, they were sentenced, they paid their restitution and served their probation. The bankruptcy court and the bankruptcy law did not interfere at all with the sentencing, with the payment of the restitution, none of it. You have a situation where within the 90 days of filing bankruptcy, the debtor is presumed to be insolvent or, in this case, debtors were insolvent, and that's not in dispute. So you're dealing with an insolvent estate. So it's actually not the debtor that actually made the payment to the state fund. It's presumed that it's all of the other creditors of this estate that will receive nothing. And, in fact, if you look at it, if you allow the state fund to keep this preferential payment, you actually put them in a better position than all the other creditors because they received the payment and their debt is deemed non-dischargeable. And it's not actually a further punishment of the debtor. It actually helps debtors because if you allow debtors to pay all their non-dischargeable debts, even within the preference period, and then file bankruptcy, then they've gotten rid of all of their non-dischargeable debts, and their creditors who, you know, the copy guy down the street, the baker, Amex, all of their other ordinary creditors will receive nothing because those are dischargeable debts. Other policy considerations? I believe that is the main one, Your Honors. And, again, the reason why I'm asking this question is because I don't think that's the answer. Essentially, California, at least as it operates the system as I understand it, as applied in this case, for example, as you say, they get the sentence. It includes the restitution. They go through whatever time the sentence requires. They've done the restitution, and now the charges are, in fact, dismissed. So now you're saying, well, they can come back, the fund can come back and go after them for the non-dischargeable debt, but counsel rejoined her to that is no because they've now served their sentence and there's no authority to go back after them. So they're essentially now the state fund isn't getting the money. I'm sorry, the victim isn't getting the money. It may be technically non-dischargeable, but it can't be collected anymore. I'm sorry. I didn't know necessarily if that is what counsel was arguing. I thought she was arguing that the district attorney's office would not be able to conduct any further prosecution of the debtor. But it's my understanding that the state fund is able to civilly enforce that judgment. So they could still go after, even if they've served their parole and everything else. I don't see any conflicting law on that issue, Your Honor. So I believe that as far as civilly enforcing the debt, they would be able to do that. As far as criminal charges, and, you know, frankly, I don't think the debtors should necessarily be charged again. They did do what they were supposed to do, but unfortunately paid the debt within the preference period. Again, the issues of Kelly have less weight in this case. The facts are distinguishable. The avoidance of the preference in this case does not interfere with the state's criminal justice system. And I sort of articulated the argument about putting the state fund in a better position and the debtor in a better position, and that is the holding in the Ninth Circuit case in Ray LaJour, where the court held that any contrary conclusion to reinstating the non-dischargeable status of an avoided preference payment would only encourage debtors to pay outstanding debts that are non-dischargeable. So the trustee would argue that the avoidance of the criminal restitution payment fulfills the intent of the bankruptcy laws by equalizing distribution to creditors, and the maintenance of the debt as non-dischargeable fulfills the state's criminal justice goals. I had started out arguing about that all of the elements of Section 547 had been met. The only one in dispute is whether or not the state fund was a creditor. Okay. And again, the last argument brought up by the state fund is the Nelson decision, which both of the lower courts, even though felt that it was non-binding, also looked at the law and just felt it was simply unpersuasive. And so, Your Honors, the trustee requests that the decisions of the lower court be affirmed in this case. Thank you. Thank you. Thank you. The court appreciates the argument. And are there any further questions of the Judicial Council? I had thought that I had reserved three minutes for rebuttal. Oh, well. I had asked for it. Well, you did reserve, but. But that was your total time, which I neglected to take. Would you like to say something? Thank you. Sorry. I'd like to note that the bankruptcy court judge had determined that the California statute must be different from the Connecticut statute, or else Kelly would not have said the victim has no control over the amount of restitution awarded or over the decision to award restitution. In fact, the bankruptcy court had assumed that because the sentence, which was handed down by the Superior Court, had actually said the restitution to state fund has been completed. The actual sentencing occurred on 3-1705. It was on 3-1805 that the district attorney had sent the check to the state fund. So when the court had said the restitution to state fund had been completed, in fact, it had been paid to the state of California. The district attorney's office had held the check. It is not for the bankruptcy court to look beyond the fact that the criminal restitution had been ordered as part of the defendant's sentence. It would be akin to looking beyond the trustee's duties on behalf of the creditors to say, in fact, the funds are not really going to the creditors. They're going to pay the trustees' expenses of managing the estate. Thank you, Your Honor. Thank you. The matter just argued is submitted for decision.
judges: Schroeder, Fisher, Smith N. R.